# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| WEDPENS DORSAINVIL, | : | |
| | : | Civil Action No. 15-3035 (ES) |
| Plaintiff, | : | |
| | : | |
| v. | : | OPINION |
| | : | |
| STUART L. PEIM, et al., | : | |
| | : | |
| Defendants. | : | |

**SALAS, DISTRICT JUDGE**

Plaintiff Wedpens Dorsainvil ("Plaintiff"), a prisoner currently incarcerated at East Jersey State Prison in Rahway, New Jersey, sought to bring this civil rights action *in forma pauperis*. Based on his affidavit of indigence, the Court previously granted Plaintiff's application to proceed *in forma pauperis* and ordered the Clerk of the Court to file the Complaint. (D.E. No. 2). The Court subsequently dismissed Plaintiff's Complaint. (*See* D.E. Nos. 4 & 5). Plaintiff then filed an Amended Complaint, which is presently before the Court. (D.E. No. 9 ("Am. Compl.")).

At this time, the Court must review Plaintiff's Amended Complaint, pursuant to 28 U.S.C. §§ 1915(e)(2), 1915A to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief. For the reasons set forth below, the Amended Complaint will be permitted to proceed in part.

**I. BACKGROUND**

Plaintiff names the following defendants in his Amended Complaint: Union County; City of Elizabeth; Elizabeth Police Department; Union County Prosecutor's Office; Khalid Walker; Honorable Stuart L. Peim, J.S.C.; James Donnelly, Assistant Prosecutor; Theodore J. Romankow, Assistant Prosecutor; Dean Marcantonio, Prosecutorial Investigator; Jorge Jimenez, Prosecutorial Investigator; Paul Pasternak, Police Officer; Thomas Dubeau, Police Officer; Richard Gregory, Prosecutorial Investigator; Dr. Ali, health practitioner at East Jersey State Prison; Ms. Lang, Medical Director at East Jersey State Prison; Patrick Nogan, Warden-Administrator at East Jersey State Prison; Ms. Gallagher, Medical Practitioner at Northern State Prison; and John Does 1-100. (*See, e.g.*, Am. Compl. at 3-9a). The following factual allegations are taken from the Amended Complaint and are accepted for purposes of this screening only. The Court has made no findings as to the veracity of Plaintiff's allegations.

In 2005, Plaintiff was acquitted in a murder trial. (Am. Compl. at 10). In response to this acquittal, Plaintiff alleges that Defendants Walker, Peim, Donnelly, Romankow, Marcantonio, Jimenez, Pasternak, Dubeau and Gregory conspired to maliciously prosecute him from June 2005 through May 2015. (*See id.* at 10-16). Specifically, Plaintiff alleges that in 2006, Defendant Pasternak became involved in the investigation of an incident where Defendant Walker was shot in the leg. (*Id.* at 10-12). Plaintiff alleges that Defendant Pasternak, "with the assistance of his co-conspirators," coerced Defendant Walker into make incriminating statements against Plaintiff so Defendants could "trump up" the charges to attempted murder. (*Id.*). Defendant Walker allegedly later admitted under oath that the only reason he made these "false statements" was because he was in jail at the time and he was told he would be released if he "went along with the program." (*Id.* at 11-12).

2

According to the Amended Complaint, Defendant Dubeau was involved with the conspiracy because he assisted Defendant Pasternak with the initial investigation and falsified police reports. (*Id.* at 12). Defendant Jimenez, Marcantonio and Gregory allegedly brought Defendant Walker to the prosecutor's office and told him they wanted him to identify Plaintiff as the shooter. (*Id.*). Plaintiff alleges that Defendant Donnelly "conspired with his co-conspirator defendants" to coerce the victim Defendant Walker to lie. (*Id.* at 13). Plaintiff alleges that Defendant Romankow was Defendant Donnelly's supervisor and "on several occasions, Plaintiff witnessed Defendant Romankow advise Defendant Donnelly on how best to proceed to keep this conspiracy going." (*Id.* at 14). Plaintiff further alleges that Defendant Peim conspired with Defendant Donnelly to deprive Plaintiff of a fair trial by refusing to read a jury note into the record; by having ex parte communications with the jury; by ordering the jury to continue deliberating even after there was an altercation between jurors; and refusing to dismiss a juror who had a vacation scheduled. (*Id.* at 14-16).

Plaintiff alleges that due to the stress of Defendants' "unlawful conduct," he suffered a stroke. (*Id.* at 17). On December 19, 2012, Plaintiff states that he woke up with the left side of his face, neck and upper chest paralyzed. (*Id.*). He received an emergency medical pass, and Nurse Carver examined him and concluded that he had Bell's Palsy. (*Id.*). Nurse Carver was supposed to schedule him for a follow up with a doctor, but three days later, she had failed to do so and consequently, Plaintiff again complained of stroke symptoms and received an emergency medical pass. (*Id.*). Plaintiff was examined by Ms. Gallagher on December 22nd and she also determined that he had Bell's Palsy. (*Id.*). She prescribed medication, an eye patch and eye drops, which Plaintiff claimed did not help his pain. (*Id.*). He saw Ms. Gallagher a few weeks later for a follow-up, when she informed him that the condition usually corrects itself in two weeks to six

months, but also prescribed him another round of Prednisone. (*Id.* at 18). In late February 2013, Plaintiff "demanded" he be given Acyclovir and within two days, he regained partial movement in his face and neck. (*Id.*). In June 2013, Plaintiff had another follow up at which he requested physical therapy, but his request was denied because there was nothing more to be done and Plaintiff had to wait for self-recovery. (*Id.*). Between August 2013 and June 2014, Plaintiff made several more requests for physical therapy, which were all denied. (*Id.* at 19). In June 2014, Plaintiff was transferred to Union County Jail where he asked for treatment and was given eye drops and Motrin for the pain. (*Id.*). On June 14, 2015, Plaintiff was transferred to East Jersey State Prison where he sought treatment from Defendant Ali who prescribed eye drops but denied physical therapy. (*Id.* at 20).

Finally, Plaintiff alleges that Defendant Nogan has implemented a new system for submitting grievances at East Jersey State Prison, which eliminated the paper grievance form and requires grievances to be submitted electronically through kiosks. (*Id.* at 21-22). However, when Plaintiff utilized the kiosk to submit a grievance about a sergeant, he was warned in writing not to use the kiosk to complain about staff members. (*Id.* at 22).

Plaintiff is seeking injunctive and monetary relief. (*Id.* at 26).

## II. DISCUSSION

### A. Legal Standard

#### 1. Standards for a Sua Sponte Dismissal

Per the Prison Litigation Reform Act, Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996) ("PLRA"), district courts must review complaints in those civil actions in which a prisoner is proceeding *in forma pauperis*, *se*e 28 U.S.C. § 1915(e)(2)(B), seeks redress against a governmental employee or entity, *see* 28 U.S.C. § 1915A(b), or brings a claim with

respect to prison conditions, *see* 28 U.S.C. § 1997e. The PLRA directs district courts to sua sponte dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. This action is subject to sua sponte screening for dismissal under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A because Plaintiff is a prisoner proceeding as an indigent.

According to the Supreme Court's decision in *Ashcroft v. Iqbal*, "a pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To survive sua sponte screening for failure to state a claim, the complaint must allege "sufficient factual matter" to show that the claim is facially plausible. *Fowler v. UPMS Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 483 n.17 (3d Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678). Moreover, while pro se pleadings are liberally construed, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted).

**2. Section 1983 Actions**

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

## B. Analysis

### 1. Judge Peim & Prosecutors Donnelly and Romankow

In its initial screening Opinion, the Court dismissed all claims *with prejudice* against Judge Peim which related to his actions during Plaintiff's trial because he was absolutely immune from liability for "activities undertaken in a judicial capacity." (D.E. No. 4 at 5-6 (citing *Illinois v. Somerville,* 410 U.S. 458, 462 (1973))). The Court also dismissed all claims against Prosecutors Donnelly and Romankow with prejudice because they were "without question intimately associated with the judicial phase of the criminal process." (*Id.* at 7 (citing *Rehberg v. Paulk*, 132 S. Ct. 1497, 1504 (2012))). The Court will not revisit those allegations here as the initial dismissal was *with prejudice* and Plaintiff has not alleged any facts which would cause this Court to amend its findings.

As also stated in the Court's previous Opinion, to the extent Plaintiff is attempting to plead a conspiracy claim against Judge Peim and the prosecutor Defendants, "Plaintiff has provided no facts to support such an assertion." (D.E. No. 4 at 7 (citing *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178 (3d Cir. 2010) ("[T]o properly plead an unconstitutional conspiracy, a plaintiff must assert facts from which a conspiratorial agreement can be inferred"))). While Plaintiff has provided additional conclusory statements that these Defendants conspired to maliciously prosecute him, none of the allegations suggest a meeting of the minds between these individuals. *See Startzell v. City of Phila.*, 533 F.3d 183, 205 (3d Cir. 2008) (stating that a

6

conspiracy requires a "meeting of the minds"). Therefore, the Court will again dismiss this claim *without prejudice*.

**2. County and City Defendants**

In his Amended Complaint, Plaintiff alleges that Union County "created a policy and/or atmosphere which allows rogue police officers and prosecutors to get away with violating the constitutional rights of citizens without fear or consequence. More specifically, the County was placed on notice of unlawful behavior of the defendants who violated Plaintiff's rights and has failed to act to curb or control their behavior, which directly led to the constitutional rights violations described herein." (Am. Compl. at 3).

It is well-established that "municipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986); *see also Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). Whether a policy or a custom, "[t]he plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the moving force behind the injury alleged." *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 404 (1997). To maintain a claim for a failure to supervise or discipline its police officers, a plaintiff must show that the municipality was deliberately indifferent to the constitutional rights of its inhabitants. *Groman v. Twp. of Manalapan*, 47 F.3d 628, 637 (3d Cir. 1995). Here, Plaintiff's minimal factual allegations, which contain no specifics about the "notice" and alleged custom or policy, fails to state a claim against Union County under *Monell*. This claim will be dismissed *without prejudice*.

Plaintiff also names the City of Elizabeth, the Elizabeth Police Department, and the Union County Prosecutor's Office as Defendants. Plaintiff's only allegation against these Defendants is that they employ the alleged wrongdoers. (*See* Am. Compl. at 3-4). However, that is insufficient for liability under § 1983. *See Monell*, 436 U.S. at 691 ("[A] municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory") (emphasis in original). As such, the claims against these Defendants will be dismissed *without prejudice*.

### 3. Officer and Investigator Defendants

The Court construes Plaintiff's allegations against Defendants Marcantonio, Jimenez, Pasternak, Dubeau, Walker and Gregory to assert claims for malicious prosecution and conspiracy.[1] (Am. Compl. at 26).

To state a § 1983 malicious prosecution claim, Plaintiff must set forth facts indicating:

> (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted

---

[1] To the extent Plaintiff also intended to raise a false arrest claim, it appears that any such claim would be substantially out of time. Civil rights claims under § 1983 are governed by New Jersey's limitations period for personal injury and must be brought within two years of the claim's accrual. *See Wilson v. Garcia*, 471 U.S. 261, 276 (1985); *Dique v. New Jersey State Police*, 603 F.3d 181, 185 (3d Cir. 2010). "Under federal law, a cause of action accrues 'when the plaintiff knew or should have known of the injury upon which the action is based.'" *Montanez v. Sec'y Pa. Dep't of Corr.*, 773 F.3d 472, 480 (3d Cir. 2014) (quoting *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009)). Accrual of a claim for false arrest occurs on the date that a plaintiff "was arrested and charges were filed against him." *Singleton v. DA Philadelphia*, 411 F. App'x 470, 472 (3d Cir. 2011). "[A] claim of false arrest, and the accompanying claim for false imprisonment, begins to accrue immediately upon the arrest at issue[;] [however,] the statute of limitations does not begin to run at the same time. Instead, the statute of limitations for a false arrest / imprisonment claim begins to run when the individual is released, or becomes held pursuant to legal process,' i.e., is arraigned." *Clark v. Warren Cty. Prison*, No. 15-6174, 2016 WL 5858985, at *3 (D.N.J. Oct. 6, 2016) (internal quotation marks and citations omitted). Here, Plaintiff's false arrest/false imprisonment claims appear to have accrued, and the statute of limitations began to run, as early as 2006 (*see* Am. Compl. at 11), or at the very latest, by 2009 (*see* Am. Compl. at 14). Either way, the two year statute of limitations had long since expired when he filed the instant matter in 2015.

> maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

*Woodyard v. Cty. of Essex*, 514 F. App'x 177, 182 (3d Cir. 2013) (citing *McKenna v. City of Phila.*, 582 F.3d 447, 461 (3d Cir. 2009)). "[T]he favorable termination of some but not all individual charges does not necessarily establish the favorable termination of the criminal proceeding as a whole." *Kossler v. Crisanti*, 564 F.3d 181, 188 (3d Cir. 2009). "Where . . . [Plaintiff was] simultaneously acquitted of some charges and convicted of others, [the Court] must determine whether 'the offenses as stated in the statute and the underlying facts of the case . . . indicate that the judgment as a whole' reflects the [Plaintiff's] innocence." *Kiriakidis v. Borough of Vintondale*, 609 F. App'x 713, 717 (3d Cir. 2015) (quoting *Kossler*, 564 F.3d at 188).

In his Amended Complaint, Plaintiff has not provided enough information about the charges and facts of the case for the Court to determine whether he has met the favorable termination element. There are several references to Plaintiff being "acquitted," but he also acknowledged that he was sentenced to 45 years in prison. (*See* Am. Compl. at 16). Based on the confusing, and seemingly contradictory, factual allegations regarding favorable termination, he has not sufficiently alleged that the judgment as a whole reflects his innocence. The Court will dismiss this claim *without prejudice*.[2]

---

[2] Consequently, the Court will also dismiss Plaintiff's claim for conspiracy to maliciously prosecute at this time. *See Washington v. Essex Cty. Sheriff's Dep't*, No. 14-7453, 2017 WL 4858120, at *3 (D.N.J. Oct. 25, 2017) ("The violation that is the object of the alleged conspiracy—malicious prosecution—has not been alleged as a matter of law. It follows that the allegation of conspiracy fails for the same reason") (citing *Stallings v. Cruz*, No. 15–7488, 2016 WL 3067438, at *3 n.2 (D.N.J. May 31, 2016) ("Civil conspiracy is [merely] a vehicle by which § 1983 liability may be imputed to those who have not actually performed the act denying constitutional rights . . . . As a result, a § 1983 conspiracy claim is not actionable without an actual violation of § 1983") (internal quotation marks and citations omitted); *see also Issa v. Delaware State Univ.*, No. 14-168, 2017 WL 3328542, at *7 (D. Del. Aug. 4, 2017) (citing *Black v. Montgomery Cty.*, 835 F.3d 358, 372 n.14 (3d Cir. 2016, as amended Sept. 16, 2016) ("Because the District Court reasoned

**4. Medical Defendants**

Against Defendants Ali, Gallagher and Lang, Plaintiff alleges a denial of medical care claim under the Eighth Amendment. (*See* Am. Compl. at 8-9, 23-25).

The Eighth Amendment to the United States Constitution, applicable to individual states through the Fourteenth Amendment, prohibits the states from inflicting "cruel and unusual punishments" on those convicted of crimes. *Rhodes v. Chapman*, 452 U.S. 337, 344–46 (1981). This proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). In order to set forth a cognizable claim for a violation of his right to adequate medical care, an inmate must allege: (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need. *Id.* at 106.

To satisfy the first prong of the *Estelle* inquiry, the inmate must demonstrate that his medical needs are serious. Serious medical needs include those that have been diagnosed by a physician as requiring treatment or that are so obvious that a lay person would recognize the necessity for a doctor's attention, and those conditions which, if untreated, would result in lifelong handicap or permanent loss. *Monmouth Cty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987).

The second element of the *Estelle* test requires an inmate to show that prison officials acted with deliberate indifference to his serious medical need. "Deliberate indifference" is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known

---

that Black could not succeed on her underlying Fourth Amendment malicious prosecution or Fourteenth Amendment due process claims, it correctly determined that she could not succeed on her conspiracy claims.").

risk of harm. *Farmer v. Brennan*, 511 U.S. 825, 837–38 (1994). Furthermore, a prisoner's subjective dissatisfaction with his medical care does not in itself indicate deliberate indifference. *Andrews v. Camden Cty.*, 95 F. Supp. 2d 217, 228 (D.N.J. 2000). Similarly, "mere disagreements over medical judgment do not state Eighth Amendment claims." *White v. Napoleon*, 897 F.2d 103, 110 (3d Cir. 1990). "Courts will disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment . . . [which] remains a question of sound professional judgment. Implicit in this deference to prison medical authorities is the assumption that such informed judgment has, in fact, been made." *Inmates of Allegheny Cty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979) (internal quotations and citations omitted). Even if a doctor's judgment concerning the proper course of a prisoner's treatment ultimately is shown to be mistaken, at most what would be proved is medical malpractice and not an Eighth Amendment violation. *Estelle*, 429 U.S. at 105–06; *White*, 897 F.2d at 110.

> Where prison authorities deny reasonable requests for medical treatment, however, and such denial exposes the inmate 'to undue suffering or the threat of tangible residual injury,' deliberate indifference is manifest. Similarly, where 'knowledge of the need for medical care [is accompanied by the] . . . intentional refusal to provide that care,' the deliberate indifference standard has been met . . . . Finally, deliberate indifference is demonstrated '[w]hen . . . prison authorities prevent an inmate from receiving recommended treatment for serious medical needs or deny access to a physician capable of evaluating the need for such treatment.

*Monmouth Cty. Corr. Inst. Inmates*, 834 F.2d at 346 (citations omitted).

Here, Plaintiff has alleged sufficient facts to allow his medical claims to proceed. Specifically, since June of 2013, Plaintiff alleges that he has been in "extreme pain" when he talks or chews and has requested physical therapy from Defendants Ali, Gallagher and Lang many times. (*See* Am. Compl. at 23-25). Defendants have denied his requests each time. (*Id.*). While the Amended Complaint contains many instances of treatment other than physical therapy, such

11

as eye drops and steroids, Plaintiff nevertheless alleges that he remained in continued extreme pain. (*Id.*). Most importantly, during one of his appointments, Plaintiff alleges that Defendant Ali informed him that "writing up" the denial of physical therapy would not do any good because "they don't provide physical therapy." (Am. Compl. at 4). Taking that allegation as true, Plaintiff has sufficiently alleged deliberate indifference on the part of Defendants for failing to provide physical therapy. *See Monmouth Cty. Corr. Inst. Inmates*, 834 F.2d at 347 (citations omitted) ("Prison officials may not, with deliberate indifference to the serious medical needs of the inmate, opt for an easier and less efficacious treatment of the inmate's condition.").

### 5. Patrick Nogan – Warden-Administrator of East Jersey State Prison

Plaintiff alleges that Defendant Nogan has implemented a new system for submitting grievances at East Jersey State Prison, which eliminated the paper grievance form and requires grievances to be submitted electronically through kiosks. (*Id.* at 21-22). However, when Plaintiff utilized the kiosk to submit a grievance about a sergeant, he was warned in writing not to use the kiosk to complain about staff members. (*Id.* at 22). Plaintiff alleges that this has left him without a way to complain at about the denial of medical treatment. (*Id.*).

The exact nature of Plaintiff's claim against Defendant Nogan is unclear, however, the Court notes that "[a]ccess to prison grievance procedures is not a constitutionally-mandated right, and allegations of improprieties in the handling of grievances do not state a cognizable claim under § 1983." *Glenn v. DelBalso*, 599 F. App'x 457, 459 (3d Cir. 2015); *see also Allah v. Thomas*, 679 F. App'x 216, (3d Cir. 2017) ("[A]ny alleged failure on the part of prison officials here to consider [prisoner's] grievances does not in itself give rise to a constitutional claim"). To the extent Plaintiff intended to raise a different claim, he is advised to explicitly state such in any motion to file an amended complaint.

**IV. CONCLUSION**

For the foregoing reasons, Plaintiff's medical claim will be permitted to proceed against Defendants Gallagher, Ali and Lang. The remaining claims will be dismissed *without prejudice* pursuant to 28 U.S.C. §§ 1915 and 1915A for failure to state a claim upon which relief may be granted. To the extent Plaintiff wishes to cure the deficiencies of the claims dismissed *without prejudice* herein, he may file a motion to amend in compliance with all appropriate federal and local rules. An appropriate Order follows.

*s/ Esther Salas*
**Esther Salas, U.S.D.J.**