Wedpens Dorsainvil
645373/4-U-5-37
E.J.S.P./Lock Bag R
1100 Woodbridge Road
Lock Bag R
Rahway, N.J. 07065

2019 JUL 15 P 3: 36

July 10, 2019

Clerk, U.S. District Court
District of New Jersey, Newark
50 Walnut Street
Newark, N.J. 07101

RE: <u>Dorsainvil v. Peim, et. al.</u>,
    Civil Action No. 15-033035 (ES)(JAD)
    42 U.S.C. 1983 (Second Amended Complaint)

Dear Clerk, U.S. District Court;

   Enclosed herewith is Plaintiff's Second Amended Complaint in the above-captioned matter.

   Please kindly notify me with a copy of the Civil Docket Sheet once this matter is filed.

                                Respectfully submitted,

                                x _Wedpens Dorsainvil_
                                Wedpens Dorsainvil, Pro Se

CC: File

```
               IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF NEW JERSEY
WEDPENS DORSAINVIL,           : Civil Action No. 15-3035 (ES)(JAD)
    Plaintiff,                : SECOND AMENDED COMPLAINT
    vs.                       : JURY DEMAND
                              :
CAROL GALLAGHER, NEW          :
JERSEY STATE PRISON;          :
DR. ALEJANDRINA, NEW
JERSEY STATE PRISON           :
AND EAST JERSEY STATE
PRISON; MS. LANG, NEW
JERSEY STATE PRISON AND       :
HICHAM ALNACHAWATI, EAST      :
JERSEY STATE PRISON, et.      :
al.,                          :
                              :
    Defendant's,              :
```

This is a civil rights action filed by Wedpens Dorsainvil, a State prisoner, for compensatory and punitive damages under 42 U.S.C. 1983, alleging denial of medical care in violation of the Eighth Amendment to the United States Constitution.

## Jurisdiction

1. The Court has jurisdiction over the plaintiff's claims of violation of federal constitutional rights under 42 U.S.C. 1331(1) and 1343.

2. The Court has supplemental jurisdiction over plaintiff's state law tort claims under 28 U.S.C. 1367.

## Parties

3. Plaintiff, Wedpens Dorsainvil, was incarcerated at New Jersey State Prison (N.J.S.P.) and East Jersey State Prison (E.J.S.P.) during the events described in this amended complaint.

1

4. Defendant Carol Gallagher, is a medical practitioner who at all times relevant mentioned herein employed at New Jersey State Prison and is sued in her individual and official capacity.

5. Defendant Alejandrina Sumicad, is a medical practitioner who at all times relevant mentioned herein was employed at New Jersey State Prison and East Jersey State Prison and is sued in her individual and official capacity.

6. Defendant Ms. Lang, is the medical director who at all times relevant was employed at New Jersey State Prison and is being sued in her individual and official capacity.

7. Defendant Hicham Alnachawati, is a medical personnel at at all times relevant mentioned herein employed at East Jersey State Prison, he is being sued in his individual and official capacity.

8. All the defendants have acted and continue to act, under color of state law, at all times relevant to this second amended complaint.

## Facts

9. On or about December 16, 2012, while at (N.J.S.P.), plaintiff awoke with the [left] side of his face, neck and upper chest paralyzed.

10. Plaintiff yelled out of the cell for assistance and, the tier officer responded at which time plaintiff informed the officer that he was 'experiencing' "stroke-like symptoms." The plaintiff was given an emergency medical pass to the infirmary.

2

11. Upon arrival at the infirmary, plaintiff was examined by nurse Carver (Carver is not a defendant in this case), who informed the plaintiff that he was suffering from [Bells Palsy]., Carver explained that plaintiff would have to wait until Monday (this incident occurred on a weekend), because doctors do not work on weekends at New Jersey State Prison.

## COUNT ONE: FAILURE TO ADMINISTER ADEQUATE MEDICAL REMEDY/DENIAL OF MEDICAL CARE

12. The following Monday; 12-17-2012, plaintiff had not been scheduled on the medical pass list.

13. By mid-day, plaintiff had not been called to the medical department to be seen by medical personnel, so he complained to the shift officer of having stroke-like symptoms.

14. as a result of this, plaintiff again was given a emergency medical pass and, examined by Defendant Gallagher, a medical practitioner who again diagnosed plaintiff with having Bells Palsy, and explained that plaintiff had a swelling of a nerve cranial 7, caused by a virus.

15. Defendant Gallagher then provided some minimal treatment, which consisted of prescribing the [wrong medication], which had no effect on my condition, plaintiff was supplied with an "eye" patch and some eye drops.

16. Plaintiff continued to experience [extreme pain] coupled with an inability to chew his food, was apparently not "important" enough to receive adequate medical treatment.

3

17. After a few weeks, plaintiff was referred back to medical for a follow-up.

18. Since the medication was completely ineffective and there were [no] noticeable signs of improvement, plaintiff asked if there was any other ["meds"] he could take because, he had been informed of a 'second' medication.

19. Defendant Gallagher stated, "no" but assured plaintiff he had nothing to worry about because, the condition normally corrects itself within 2-weeks to 6-months, but just in case, plaintiff was given another cycle of <u>prednisone</u>.

20. In late February 2013, Plaintiff demanded he be given <u>Acyclovir</u>, a drug which had been prescribed to other inmates with the [same] condition and made full recoveries.

21. Acyclovir had not been given to plaintiff until late March 2013. Within 2-weeks of taking that medication, plaintiff partially regained some muscle movement of the face and neck area.

22. On or about June 2013, plaintiff was again scheduled for the follow-up treatment at the conclusion of the "90-day" cycle of Acyclovir.

23. Although there was "little" improvement, plaintiff complained of involuntary facial movements-i.e., "twitches") as well as extreme pain when plaintiff talked and chewed.

24. Plaintiff then requested physical therapy to strengthen facial and neck muscles to aid in a full recovery.

4

25. The request for physical therapy by plaintiff was denied by medical staff, and he was told "there was nothing more that could be done, that he had to be 'patient' and wait for self-recovery."

26. Despite, Defendant Gallagher's prediction of 2-weeks to 6-months for a full recovery, was wrong, she assured plaintiff "everything would go back to normal" if he would just be patient.

27. Despite the fact, Defendant Gallagher, claimed physical therapy would not work, she advised plaintiff to "massage his face" in an upward motion to avoid any further drooping of his face.

28. On or about August 2013, plaintiff again requested physical therapy as his condition did not improve, this request was denied and, plaintiff was again, instructed to be patient.

29. On or about December 2013, plaintiff wrote a request for physical therapy because, he suffered stroke-like symptoms. Plaintiff requested the same medical treatment of prisoners similarly situated, including physical therapy consisting of electronic padded simulators, this request went unanswered.

30. On or about March 2014, plaintiff wrote a letter to defendant LANGer (W.D.) which described his condition, due to inadequate and untimely treatment of his symptoms by her and her subordinates.

31. Plaintiff further requested physical therapy, and defendant ignored this request as well.

31. On or about June 2014, plaintiff was transferred to Union County Jail, where he again complained about his condition and was told to "drop a slip."

5

32. On or about June 23, 2014, plaintiff was seen by a physician at the Union County Jail and complained about his serious medical condition.

33. The physician informed plaintiff, that he had a [pre-existing medical condition] and the Jail would not provide treatment, but plaintiff was given eye drops and Moltrin to ease the extreme pain he was suffering.

34. On or about May 26, 2015, plaintiff was transferred back to the State system to C.R.A.F., where plaintiff continued to complain about his Bells Palsy condition, the extreme pain that he was enduring for lack of treatment, the denial of physical therapy, while he was at New Jersey State Prison. Plaintiff was informed to speak to a doctor.

35. On or about May 27, 2015, plaintiff spoke to the nurse complaining about his serious medical condition.

36. Plaintiff's complaints were [filed] but, plaintiff was informed <u>no care could be given</u> because, of the "facility" being a "reception facility" and plaintiff was instructed to complain upon transfer into an appropriate facility.

37. On or about May 31, 2015, plaintiff requested to see the [eye doctor] Walter Beckford, to request a new eye exam and prescription eye glasses because, of the [nerve] damage to his left eye caused by inadequate medical treatment of the Bells Palsy, and lack of physical therapy.

6

38. On or about June 1, 2015, plaintiff was transferred to East Jersey State Prison, where plaintiff continued to complain about his extreme pain and suffering. As a result plaintiff was scheduled to see the doctor.

39. On or about June 24, 2015, plaintiff was seen by Defendant Sumicad, and complained about his Bells Palsy medical diagnosis, the extreme pain that he suffered when chewing and talking, the vision problems and severe dryness of his left eye as well as the previous denials of his request for physical therapy, despite the obvious need for it.

40. Defendant Sumicad, responded by saying she was going to prescribe an artificial tears solution and lubricant eye ointment to prevent dryness and possible blindness.

41. Defendant Sumicad, answered plaintiff's request for physical therapy by stating, "she was not going to recommend that."

42. Plaintiff responded by stating, "physical therapy would strengthen the [muscles] in his [face] and he would, not be subjected to the pain he was suffering every time he talked or chewed."

43. Plaintiff also stated to defendant that, "he would write the incident up if, defendant would not properly treat his medical condition."

44. Defendant asked plaintiff, "not to write the incident up and said, it would not do any good because, they do not provide physical therapy."

7

45. Defendant did nothing to stop the pain plaintiff was suffering or to repair the damage caused by the stroke-like symptoms.

46. Plaintiff continues to be denied physical therapy for his serious medical condition.

47. On or about July 6, 2015, plaintiff went to medical to address a low iron deficiency, while speaking to the doctor, Defendant Hicham Alnachawati, plaintiff again requested physical therapy treatment for the Bells Palsy diagnosis to help him recover, regain strength and full muscle function in his face and neck area and was again denied.

48. As a result of the Defendant's, Gallagher, Sumicad, Ms. Lang, Alnachawati, refusal to treat plaintiff's serious medical condition, with all plaintiff's complaints and grievances unanswered on the issue. Plaintiff has suffered extreme mental anguish, emotional distress, physical pain and suffering and has a physical disfigurement.

## COUNT TWO: NEGLIGENCE

49. Defendant's knowingly, purposefully, willfully failed to provide plaintiff with necessary medical care for his serious medical needs which amounts to negligence. Defendants knew that plaintiff was diagnosed with Bells Palsy and further knew that his condition required facial massages, as noted when the defendant suggested that plaintiff massage his face. Defendant's actions amounted to negligence because they willfully failed to provide physical therapy to plaintiff.

WHEREFORE, plaintiff requests that the court grant the following;

1. Issue a declaratory judgment stating that;

(a) Immediately arrange for plaintiff's need for physical therapy and follow up treatment and to be immediately evaluated by medical professionals with expertise in treatment of Bells Palsy with a goal toward restoration of function of plaintiff's face and neck muscles and;

(b) Carry out without delay the treatment directed by such medical professionals;

2. Award compensatory damages in the following amounts;

(a) $500,000, jointly and severally against the defendant's, Gallaher, Sumicad, Lang and Alnachawati for physical and emotional injury resulting from their failure to provide adequate medical treatment for the Bells Palsy diagnosis to plaintiff;

3. Award Punitive Damages in the following amounts:

(a) $100,000 each against Defendant's Gallagher, Sumicad, Lang and Alnachawati.

4. Grant such other relief as it may appear that plaintiff is entitled.

> Respectfully submitted,
>
> x *Wedpens Dorsainvil*
> Wedpens Dorsainvil, Pro Se
> 645373/4-U-5-37
> E.J.S.P./Lock Bag R
> 1100 Woodbridge Road
> Rahway, N.J. 07065

Dated: July 10, 2019
Rahway, N.J. 07065

I declare under penalty of perjury that the statements made above are true upon information knowledge and belief. 28 U.S.C. 1746

x *Wedpens Dorsainvil*
Wedpens Dorsainvil

Dated: July 10, 2019.

9