**Not for Publication**

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| WEDPENS DORSAINVIL, | |
| Plaintiff, | Civil Action No. 15-3035 (ES) |
| v. | OPINION |
| STUART L. PEIM, et al., | |
| Defendants. | |

**SALAS, DISTRICT JUDGE**

This matter is before the Court upon separate motions to dismiss filed by defendant Carol Gallagher (D.E. No. 60) and defendant Alejandrina Sumicad (D.E. No. 61). Defendants Gallagher and Sumicad (collectively, "Defendants") seek to dismiss the second amended complaint (D.E. No. 56 ("SAC")) filed by plaintiff Wedpens Dorsainvil ("Plaintiff") pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff filed oppositions to the motions to dismiss (D.E. Nos. 62 & 67) and Defendants filed replies (D.E. Nos. 65 & 70). Having considered the parties' submissions, the Court decides this matter without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1.

As set forth below, the Court DENIES Defendants' motions to dismiss.

**I.     Background**[1]

On or about December 16, 2012, while confined at New Jersey State Prison, Plaintiff awoke with the left side of his face, neck, and upper chest paralyzed. (SAC ¶ 9). Plaintiff was given an emergency medical pass to the infirmary, and upon arrival, Plaintiff was examined by

---

[1]     The Court must accept Plaintiff's factual allegations as true for purposes of resolving the pending motions to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bistrian v. Levi*, 696 F.3d 352, 358 n.1 (3d Cir. 2012).

Nurse Carver. (*Id.* ¶¶ 11–12). Nurse Carver informed Plaintiff that he was suffering from Bell's palsy, and that he would have to wait until Monday because doctors do not work on weekends at New Jersey State Prison. (*Id.* ¶ 11). On Monday, because he had not been called to the medical department to be seen by medical personnel, Plaintiff complained to the shift officer about stroke-like symptoms and was given an emergency medical pass. (*Id.* ¶¶ 12–13). Defendant Gallagher again diagnosed Plaintiff with Bell's palsy and explained that Plaintiff had a swelling of a cranial nerve caused by a virus. (*Id.* ¶ 14). Defendant Gallagher gave Plaintiff an eye patch, eye drops, and medication that allegedly had no effect on Plaintiff's condition. (*Id.* ¶ 15).

Plaintiff continued to experience extreme pain coupled with an inability to chew food. (*Id.* ¶ 16). After a few weeks, Plaintiff was referred back to medical for a follow-up. (*Id.* ¶ 17). Because there were no noticeable signs of improvement, Plaintiff asked if there were any other medications he could take because he had been informed of a "second medication." (*Id.* ¶ 18). Defendant Gallagher stated, "no" but assured Plaintiff that Plaintiff had nothing to worry about because the condition normally corrects itself in 2 weeks to 6 months. (*Id.* ¶ 19). Nevertheless, Plaintiff was given another cycle of prednisone. (*Id.* ¶ 19). In late February 2013, Plaintiff demanded that he be given Acyclovir, a drug which had been prescribed to other inmates with the same condition and resulted in their full recoveries. (*Id.* ¶ 20). Plaintiff finally received Acyclovir in late March 2013. (*Id.* ¶ 21). Within 2 weeks of taking that medication, Plaintiff partially regained some muscle movement of the face and neck area. (*Id.* ¶ 21).

On or about June 2013, Plaintiff was again scheduled for a follow-up treatment at the conclusion of the 90-day cycle of Acyclovir. (*Id.* ¶ 22). Although there was a little improvement, Plaintiff complained of involuntary facial movements, as well as extreme pain when he talked and chewed. (*Id.* ¶ 23). Plaintiff then requested physical therapy to strengthen facial and neck muscles

to aid in a full recovery. (*Id.* ¶ 24). The request for physical therapy was denied by medical staff, and Plaintiff was told that "there was nothing more that could be done," that he had to be "patient and wait for self-recovery." (*Id.* ¶ 25) (internal quotation marks omitted). Despite the fact that her prediction of 2 weeks to 6 months for a full recovery was wrong, Defendant Gallagher assured Plaintiff that "everything would go back to normal if he would just be patient." (*Id.* ¶ 26). Further, even though she claimed that physical therapy would not work, Defendant Gallagher advised Plaintiff to "massage his face" in an upward motion to avoid any further drooping. (*Id.* ¶ 27). In or about August 2013, Plaintiff again requested physical therapy because his condition had not improved. (*Id.* ¶ 28). His request was denied again, and he was again advised to be patient. (*Id.*). Plaintiff continued to request physical therapy over the next ten months, but his requests were allegedly denied or ignored. (*Id.* ¶¶ 29–31).

Plaintiff was thereafter transferred to several different facilities and ultimately ended up at East Jersey State Prison in June 2015. (*Id.* ¶ 38). At that time, Defendant Sumicad saw Plaintiff for his Bell's palsy, the extreme pain he suffered when chewing and talking, and the vision problems and severe dryness of his left eye. (*Id.* ¶ 39). Defendant Sumicad prescribed an artificial tears solution and a lubricant eye ointment to prevent dryness and possible blindness. (*Id.* ¶ 40). However, she informed Plaintiff that she would not recommend physical therapy. (*Id.*). When Plaintiff informed Defendant Sumicad that Plaintiff would "write the incident up," Defendant Sumicad said that it would not do any good because "they do not provide physical therapy." (*Id.* ¶ 44).

In response to the SAC, both Defendants filed motions to dismiss. (D.E. Nos. 60 & 61). Both Defendants argue that the SAC should be dismissed because it impermissibly included a

3

negligence claim for which Plaintiff did not seek permission.[2] (D.E. No. 60-1 ("Gallagher Mov. Br.") at 6; D.E. No. 61-1 ("Sumicad Mov. Br.") at 4). Defendants also argue that the SAC fails to state a claim upon which relief can be granted. (Gallagher Mov. Br. at 8; Sumicad Mov. Br. at 6). In addition, Defendant Gallagher argues that the claim against her is time-barred. (Gallagher Mov. Br. at 7).

## II. Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *See Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when Plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Determining whether there is "a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

"When reviewing a motion to dismiss, '[a]ll allegations in the complaint must be accepted as true, and Plaintiff must be given the benefit of every favorable inference to be drawn therefrom.'" *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (alteration in original) (quoting *Kulwicki v. Dawson*, 969 F.2d 1454, 1462 (3d Cir. 1992)). But the court is not required to accept

---

[2] In light of Plaintiff's *pro se* status, the Court will not dismiss the SAC in its entirety even if Plaintiff failed to strictly adhere to Magistrate Judge Dickson's Orders issued on April 1, 2019, and July 2, 2019 (D.E. Nos. 45 & 55) and asserts a claim for negligence for which Plaintiff had not specifically sought permission. *See*, *e.g.*, Fed. R. Civ. P. 15(a)(2) (leave to amend pleadings is to be freely given); *Foman v. Davis*, 371 U.S. 178, 182 (1962) (the decision to grant leave to amend rests within the discretion of the court).

4

as true "legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

The inquiry is "normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus*, 641 F.3d at 563.

Finally, "[i]n deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of the public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010); *see also Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) ("In evaluating a motion to dismiss, we may consider documents that are attached to or submitted with the complaint, and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, and items appearing in the record of the case.") (internal quotation marks, textual alterations, and citations omitted).

### III. DISCUSSION

#### A. Statute of Limitations

Defendant Gallagher argues that all allegations of wrongdoing by her in the SAC occurred more than two years before the filing of the First Amended Complaint in December 3, 2015, and therefore must be dismissed as barred by the statute of limitations. (Gallagher Mov. Br. at 7).

"[A] § 1983 claim is governed by the statute of limitations that applies to personal injury tort claims in the state in which such a claim arises." *Kach v. Hose*, 589 F.3d 626, 639 (3d Cir. 2009); *accord Wallace v. Kato*, 549 U.S. 384, 387 (2007); *Cito v. Bridgewater Twp. Police Dep't*, 892 F.2d 23, 25 (3d Cir. 1989). Additionally, a state's tolling principles also govern § 1983 claims

5

when they do not conflict with federal law. *Kach*, 589 F.3d at 639. Under New Jersey law, there is a two-year statute of limitations period for personal-injury torts. N.J. Stat. Ann. § 2A:14-2 (West 2019). The date that a cause of action accrues under § 1983, however, is a matter of federal law. *See Kach*, 589 F.3d at 634. Under federal law, a cause of action accrues, and the statute of limitations begins to run, when the plaintiff knew or should have known of the injury. *Id.*

Defendant Gallagher argues that the only alleged wrongdoing Plaintiff attributes to her occurred in December 2012 (and a few weeks after that) and in June 2013, and Plaintiff's claim against her therefore accrued at that time. (Gallagher Mov. Br. at 7). As a result, Plaintiff's claim against her was filed six months past the expiration of the two-year statute of limitations. (*Id.*).

In the SAC, Plaintiff specifically alleges that, in June 2013, he saw Defendant Gallagher for a follow-up, at which time he requested physical therapy. (SAC ¶¶ 22–26). Defendant Gallagher allegedly denied his request and advised him to "be patient." (*Id.* ¶ 26). Plaintiff also alleges that he again requested physical therapy in August 2013 and was told again to "be patient" (*Id.* ¶ 28). Moreover, Plaintiff states that, in December 2013, he wrote a request for physical therapy, but that request went unanswered. (*Id.* ¶ 29). While Defendant Gallagher is correct that Plaintiff does not specifically use her name while discussing the events in or around December 2013, throughout this particular section of the SAC, Plaintiff is not making allegations against any other defendants. (*See Id.* ¶¶ 22–29). Plaintiff does not identify another defendant until Paragraph 30, where he discussed Defendant Lang. While it would have been preferable for Plaintiff to specifically use Defendant Gallagher's name in connection with the allegation of continued requests for physical therapy in December 2013, based on the surrounding paragraphs and liberally construing the SAC, the Court finds that Plaintiff has sufficiently alleged that he was still seeking and being denied physical therapy by Defendant Gallagher in December 2013. *See Erickson v.*

6

*Pardus*, 551 U.S. 89, 94 (2007) (courts must liberally construe pleadings that are filed *pro se*). Because Defendant Gallagher does not address the allegation of wrongdoing in December 2013, her request for dismissal of the medical care claim as untimely is denied.

### B. Denial of Medical Care

Both Defendants move to dismiss the SAC for failure to state a claim against them.

The Eighth Amendment's proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). In order to set forth a cognizable claim for the violation of adequate medical care, an inmate must allege: (1) a serious medical need, and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need. *Id.* at 106; *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003).

"A medical need is serious if it 'has been diagnosed by a physician as requiring treatment,' or if it 'is so obvious that a lay person would easily recognize the necessity for a doctor's attention.'" *See Mitchell v. Beard*, 492 F. App'x 230, 236 (3d Cir. 2012) (quoting *Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987)). The seriousness of an inmate's medical need "may also be determined by reference to the effect of denying the particular treatment." *Monmouth Cty. Corr. Institutional Inmates*, 834 F.2d at 347. "For instance, *Estelle* makes clear that if 'unnecessary and wanton infliction of pain' results from denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the eighth amendment." *Id.* at 347 (quoting *Estelle*, 429 U.S. at 105).

"Deliberate indifference" is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm. *Farmer v. Brennan*, 511 U.S. 825, 835–36 (1994). The Third Circuit has found deliberate indifference where a prison official: "(1) knows

of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a nonmedical reason; or (3) prevents a prisoner from receiving needed or recommended treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). Deliberate indifference can also be found "where the prison official persists in a particular course of treatment 'in the face of resultant pain and risk of permanent injury.'" *Id*. (quoting *White v. Napoleon*, 897 F.2d 103, 109 (3d Cir. 1990)). "Prison officials may not, with deliberate indifference to the serious medical needs of the inmate, opt for an easier and less efficacious treatment of the inmate's condition." *Monmouth Cty. Corr. Institutional Inmates*, 834 F.2d at 347 (internal quotation marks and citation omitted). Finally, Courts give deference to prison medical authorities in the diagnosis and treatment of patients, and "disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment . . . (which) remains a question of sound professional judgment." *Inmates of Allegheny Cty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979) (alteration in original) (quoting *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977)).

Both Defendants argue that Plaintiff has failed to allege that he suffered from a serious medical need. (Gallagher Mov. Br. at 10; Sumicad Mov. Br. at 7). Specifically, Defendants contend that Plaintiff has not "alleged any facts to show any denial of treatment by [Drs. Gallagher or Sumicad] that caused him either a life-long handicap or permanent loss; or that [they] unnecessarily and wantonly inflicted pain on Plaintiff." (Gallagher Mov. Br. at 10; Sumicad Mov. Br. at 7). Defendants are incorrect. Several times in his SAC, Plaintiff states that he was in "extreme pain" when he talked and chewed. (SAC ¶¶ 16, 23 & 39). Certainly, allegations of months of "extreme pain" would qualify as a serious medical need. *See Estelle*, 429 U.S. at 105.

Defendants also argue that Plaintiff has not alleged deliberate indifference. (Gallagher Mov. Br. at 10–12; Sumicad Mov. Br. at 7–9). Relying on *Green v. Mazzone*, No. 99-3190, 2002

8

WL 1636709 (D.N.J. July 19, 2002), Defendants argue that Plaintiff merely disagrees with Defendants' medical decisions not to order physical therapy and to treat his condition in other ways. (Gallagher Mov. Br. at 11–12; Sumicad Mov. Br. at 8–9). The Court again disagrees. According to the allegations of the SAC, Defendants persisted in a treatment course (*i.e.* denial of Acyclovir for two months and denial of physical therapy for two years), which resulted in "extreme pain" for Plaintiff. (SAC ¶¶ 16, 23 & 39). Viewing the allegations in light most favorable to Plaintiff, the SAC plausibly alleged that Defendants are deliberately indifferent to Plaintiff's medical needs. *See White*, 897 F.2d at 109. Additionally, when denying physical therapy, Dr. Sumicad simply stated that "they do not provide physical therapy" (SAC ¶ 44), which could suggest a decision by her to "opt for 'an easier and less efficacious' treatment of the inmate's condition." *See Monmouth Cty. Corr. Institutional Inmates*, 834 F.2d at 347 (quotations omitted) (quoting *West v. Keve*, 571 F.2d 158, 162 (3d Cir. 1978)). The Court is unable to conclude, at this motion to dismiss stage, that Plaintiff is merely "disagreeing" with the treatment decisions by Defendants. Defendants' reliance on *Green* does not change this conclusion, because *Green* was at the summary judgment stage, with the benefit of a full record. *See Green*, 2002 WL 1636709, at *1–3. As such, the Court will deny Defendants' motions to dismiss.

IV. **CONCLUSION**

Based on the foregoing, Defendants' motions to dismiss are DENIED. An appropriate order follows.

*s/Esther Salas*
**Esther Salas, U.S.D.J.**