Not for Publication

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **WEDPENS DORSAINVIL,**<br><br>Plaintiff,<br><br>v.<br><br>**CAROL GALLAGHER,** *et al.*,<br><br>Defendants. | **Civil Action No.: 15-3035 (ES) (JSA)**<br><br>**OPINION** |

**SALAS, DISTRICT JUDGE**

Plaintiff Wedpens Dorsainvil is proceeding with a complaint for Eighth Amendment violations under 42 U.S.C. § 1983 ("Section 1983") and negligence under New Jersey state law in connection with certain medical treatment. (D.E. No. 56 ("Second Amended Complaint" or "SAC") at 1 & ¶¶ 12–49). Before the Court is a motion for summary judgment filed by Defendants Carol Gallagher and Alejandrina Sumicad (collectively, "Defendants") pursuant to Federal Rule of Civil Procedure 56. (D.E. Nos. 113 & 113-2 ("Mov. Br.")). Having considered the parties' submissions, the Court decides this matter without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the reasons set forth below, the motion is **GRANTED**.

**I.      BACKGROUND**[1]

Unless otherwise noted, the following facts are not in dispute. On December 16, 2012, a nurse examined Plaintiff, then an inmate at New Jersey State Prison, regarding numbness on the left side of his face. (Def. SUMF ¶ 5; Pl. SUMF ¶ 5). The nurse noted Plaintiff's "loss of smile"

---

[1] The Court gathers the following facts primarily from Defendants' statement of undisputed material facts (D.E. No. 113-3 ("Def. SUMF")), Plaintiff's counterstatement of material facts (D.E. No. 114-1 ("Pl. SUMF")), and Plaintiff's deposition testimony (D.E. No. 114-2, Ex. A to Hudson Cert. ("Dorsainvil Dep.")).

on the left side of his face and that his eyebrows only moved slightly. (Def. SUMF ¶ 5; Pl. SUMF ¶ 5). The nurse referred Plaintiff for a follow-up appointment. (Def. SUMF ¶ 5; Pl. SUMF ¶ 5). The next day, Defendant Gallagher, a nurse practitioner, examined Plaintiff regarding the numbness of his face. (Def. SUMF ¶ 6; Pl. SUMF ¶ 6). Gallagher diagnosed Plaintiff with Bell's Palsy and prescribed him a drug known as Prednisone. (Def. SUMF ¶ 6; Pl. SUMF ¶ 6). Gallagher also gave Plaintiff an eye patch and artificial tears to apply to his left eye. (Def. SUMF ¶ 6; Pl. SUMF ¶ 6).

On December 24, 2012, Gallagher again examined Plaintiff in connection with his Bell's Palsy. (Def. SUMF ¶ 8; Pl. SUMF ¶ 8). Plaintiff advised her that he was still experiencing issues moving his face and blinking his eye. (Def. SUMF ¶ 8; Pl. SUMF ¶ 8). Gallagher advised Plaintiff to continue using the eye patch and prescribed him Ibuprofen for facial pain. (Def. SUMF ¶ 8; Pl. SUMF ¶ 8).

On January 9, 2013, Gallagher examined Plaintiff again. (Def. SUMF ¶ 9; Pl. SUMF ¶ 9). Plaintiff advised her that he had not regained full function of his face. (Def. SUMF ¶ 9; Pl. SUMF ¶ 9). Gallagher noted that Plaintiff's ability to blink his left eye had improved, but his Bell's Palsy was persisting, and he still could not blink his left eye completely shut. (Def. SUMF ¶ 9; Pl. SUMF ¶ 9). She advised him to continue to use the eye patch and to follow up in one month or sooner, if needed. (Def. SUMF ¶ 9; Pl. SUMF ¶ 9). Plaintiff testified that he told Gallagher he had heard of another medication a fellow inmate was prescribed for similar symptoms, though he couldn't recall the name of the medication at the time. (Dorsainvil Dep. at 27:13–24). He asked Gallagher if there was another medication he should be taking, to which she replied in the negative. (*Id.* at 27:24–28:23).

On February 7, 2013, Plaintiff saw Gallagher for a follow-up appointment. (Def. SUMF ¶ 11; Pl. SUMF ¶ 11). Plaintiff advised her that he still had difficulty smiling but the function of his left eye lid was improving. (Def. SUMF ¶ 11; Pl. SUMF ¶ 11). According to Gallagher, she ordered another round of Prednisone and advised Plaintiff to continue to use the eye patch and artificial tears and to follow up in two to three weeks. (Def. SUMF ¶ 11). However, according to Plaintiff, he requested "an alternative medication" during this appointment (Pl. SUMF ¶ 11), and he testified that Gallagher ordered the medication—specifically, a drug known as Acyclovir—upon his request, which he received the following month. (Dorsainvil Dep. at 31:1–33:12).

On March 19, 2013, Gallagher again examined Plaintiff. (Def. SUMF ¶ 15; Pl. SUMF ¶ 15). Plaintiff presented with multiple herpetic lesions on his lips and stated that he was recovering from a cold. (Def. SUMF ¶ 15; Pl. SUMF ¶ 15). Gallagher noted Plaintiff's ongoing treatment for Bell's Palsy. (Def. SUMF ¶ 15). According to Gallagher, she prescribed him Acyclovir during this appointment to treat his herpetic lesions. (*Id.*). Plaintiff concedes that Gallagher prescribed him Acyclovir, but disputes that she prescribed the medication "solely for the herpetic lesions." (Pl. SUMF ¶ 15).

On August 13, 2013, Defendant Sumicad, a second nurse practitioner, examined Plaintiff regarding his request to refill his prescription for Acyclovir. (Def. SUMF ¶ 17; Pl. SUMF ¶ 17). Sumicad did not refill the prescription, noting that Plaintiff "currently does not require any antiviral medication as there are no lesions." (Def. SUMF ¶ 17; Pl. SUMF ¶ 17). She noted Plaintiff's ongoing treatment for Bell's Palsy and encouraged Plaintiff to incorporate massage for his facial palsy. (Def. SUMF ¶ 17; Pl. SUMF ¶ 17).

Plaintiff testified that he requested physical therapy throughout 2013 and 2014, which was denied, in at least one instance, by Gallagher. (Dorsainvil Dep. at 44:21–46:6). Plaintiff testified

3

that no medical provider recommended physical therapy to him while he was incarcerated, or since, and that he requested physical therapy because another inmate had told him that he was receiving physical therapy for his Bell's Palsy. (*Id.* at 38:21–39:11 & 92:18–93:8). Defendants assert that they did not refer Plaintiff to physical therapy because it is an "'unproven therapy' that is not indicated for Bell's Palsy," which Plaintiff does not dispute. (Def. SUMF ¶ 24; Pl. SUMF ¶ 24).

On April 28, 2015, Plaintiff initiated this action *pro se*, originally alleging constitutional violations, including violations of the right to be tried by an impartial jury and to be free of wrongful imprisonment. (D.E. No. 1). The complaint did not name Gallagher or Sumicad as defendants. (*See id.*).

On June 1, 2015, Plaintiff was transferred to East Jersey State Prison. (Def. SUMF ¶ 19; Pl. SUMF ¶ 19). On June 24, 2015, a nurse examined Plaintiff in connection with his Bell's Palsy, and the nurse referred Plaintiff for further evaluation. (Def. SUMF ¶ 20; Pl. SUMF ¶ 20). That same day, Sumicad examined Plaintiff and prescribed artificial tears and ointment. (Def. SUMF ¶ 21; Pl. SUMF ¶ 21).

On December 3, 2015, Plaintiff filed an amended complaint, naming Gallagher and Sumicad, among others, as additional defendants. (D.E. No. 9). On July 15, 2019, Plaintiff filed his Second Amended Complaint alleging the following two counts: (i) violation of Plaintiff's Eighth Amendment rights under Section 1983 (Count One); and (ii) negligence under New Jersey state law (Count Two). (*See* SAC at 1 & ¶¶ 12–49). Plaintiff submits that this Court has federal question jurisdiction as to Count One pursuant to 42 U.S.C. §§ 1331(1) and 1343, and may exercise supplemental jurisdiction as to Count Two pursuant to 28 U.S.C. § 1367. (*Id.* at ¶¶ 1–2). Plaintiff seeks relief in the form of physical therapy and treatment for his Bell's Palsy, as well as

$500,000.00 for "physical and emotional injury," and $100,000.00 in punitive damages against each named defendant. (*Id.* at 9).

On August 28, 2019, Gallagher and Sumicad separately filed motions to dismiss the Second Amended Complaint. (D.E. Nos. 60 & 61). On March 24, 2020, the Court, considering both motions together, denied both motions. (D.E. Nos. 71 & 72). On March 30, 2020, the Court granted Plaintiff's motion for the appointment of *pro bono* counsel. (D.E. No. 73). On April 7, 2020, Defendants filed an answer to the Second Amended Complaint and the matter proceeded to discovery. (D.E. No. 74).

During his deposition, Plaintiff testified that he was never refused medical treatment or denied the opportunity to meet with health care providers while he was in the state prison system. (Dorsainvil Dep. at 20:9–20). Plaintiff further testified that at no point did Gallagher tell him that she would not treat him for any illness or injury. (*Id.* at 67:17–20).

On August 4, 2021, the parties attended a settlement conference that was unsuccessful, and the Court issued a Scheduling Order for expert discovery. (D.E. No. 90). After the deadlines for expert discovery passed without Plaintiff identifying an expert, Defendants jointly filed the instant motion for summary judgment. (D.E. No. 113). The motion is fully briefed. (D.E. No. 114 ("Opp."); D.E. No. 115 ("Reply")).[2] The Court is prepared to rule.

## II.    LEGAL STANDARD

A court should grant summary judgment if the evidence in the record, viewed with all reasonable inferences in favor of the nonmoving party, demonstrates that there is no genuine issue of material fact, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56;

---

[2] Unless otherwise noted, pin cites to Defendants' Reply refer to the page numbers automatically generated by the Court's electronic filing system.

*see also Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). An issue is "genuine" if a reasonable jury could possibly find in the nonmovant's favor on that issue. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A fact is "material" if it influences the outcome under the applicable law. *Id.* at 248.

On a summary judgment motion, the moving party must first show that no genuine issue of material fact exists. *Celotex*, 477 U.S. at 323. If the moving party has met its initial burden, the burden then shifts to the nonmoving party to present evidence that a genuine issue of material fact compels a trial, and to demonstrate that he can make a sufficient showing on each essential element of his case for which he bears the burden of proof. *Id.* at 323. To meet this burden, the nonmoving party must offer specific facts that establish a genuine issue of material fact, not just "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Thus, the nonmoving party cannot rely on unsupported assertions, bare allegations, or speculation to defeat summary judgment. *See Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 252 (3d Cir. 1999). The nonmoving party must go beyond the pleadings and point to specific factual evidence that shows there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *see also Celotex*, 477 U.S. at 323–24. If a party who bears the ultimate burden of proof at trial has failed "to make a showing sufficient to establish the existence of an element essential to that party's case," there can be no genuine issue of material fact, and summary judgment against that party is appropriate. *Celotex*, 477 U.S. at 322–23; *see also Orsatti v. N.J. State Police*, 71 F. 3d 480, 484 (3d Cir. 1995).

### III.  DISCUSSION

#### A.  Eighth Amendment Claim (Count One)

Plaintiff brings his Eighth Amendment claim pursuant to Section 1983. (*See* SAC at 1). To succeed on a Section 1983 claim, a plaintiff must show (i) a person acting under color of state law committed the conduct complained of and (ii) the conduct deprived the plaintiff of a federally secured right. *Moore v. Tartler*, 986 F.2d 682, 685 (3d Cir. 1983). As Defendants do not appear to argue that they were not acting under color of state law, the only issue is whether their conduct deprived Plaintiff of a federally secured right. Plaintiff argues that Defendants' conduct violated his Eighth Amendment right to be free from cruel and unusual punishment. (Opp. at 7–11). The Eighth Amendment's proscription against cruel and unusual punishment includes the requirement that prison officials provide inmates with medical care. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). To prevail on an Eighth Amendment claim under Section 1983 in this context, a plaintiff must show (i) a serious medical need and (ii) behavior on the part of prison officials that constitutes deliberate indifference to that need. *Id.* at 106.

Defendants argue that the Court should enter summary judgment in their favor on Count One because the record does not establish either that Plaintiff suffered a serious medical need or that Defendants were deliberately indifferent to Plaintiff's Bell's Palsy. (Mov. Br. at 5–11). Plaintiff opposes both arguments. *First*, he argues that the record shows he suffered from a serious medical need, namely, Bell's Palsy, because a medical need is considered serious if it "has been diagnosed by a physician as requiring treatment." (Opp. at 8 (quoting *Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987))). *Second*, he argues that Defendants were indifferent to his Bell's Palsy by pointing to his testimony that, according to Plaintiff, shows the Defendants (i) initially denied his request for Acyclovir and (ii) denied his

request for physical therapy. (Opp. at 10 (citing Dorsainvil Dep. at 31:7–23 & 33:2–7)). In reply, Defendants argue that even if Plaintiff suffered from a serious medical need, he is still unable to establish the essential element of deliberate indifference. (Reply at 2). For the following reasons, even assuming Plaintiff presented with a serious medical need, the Court agrees with Defendants that Plaintiff has not established the requisite element of deliberate indifference.

It is "well-established law in this and virtually every circuit that actions characterizable as medical malpractice do not rise to the level of 'deliberate indifference' under the Eighth Amendment." *Parham v. Johnson*, 126 F.3d 454, 458 n.7 (3d Cir. 1997); *see also Estelle*, 429 U.S. at 105–06 (noting that a prisoner's claim of negligent diagnosis or treatment does not constitute infliction of pain "repugnant to the conscience of mankind" so as to establish deliberate indifference) (quoting *La. ex rel. Francis v. Resweber*, 329 U.S. 459, 471 (1947) (Frankfurter, concurring)). "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgment and to constitutionalize claims which sound in state tort law." *United States ex rel. Walker v. Fayette Cnty.*, 599 F.2d 573, 575 n.2 (3d Cir. 1979) (quoting *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976)). "[M]ere disagreement as to the proper medical treatment" is insufficient to establish a constitutional violation. *Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004) (alteration in original) (quoting *Lanzaro*, 834 F.2d at 346); *see also Twardzik v. Devero*, No. 15-0015, 2015 WL 3755243, at *6 (E.D. Pa. June 15, 2015) (noting the "decision not to order specific forms of diagnostic treatment constitutes medical judgment, which is not actionable") (citing *Estelle*, 429 U.S. at 107). As such, "deliberate indifference" is more than mere malpractice or negligence; it is a state of mind equivalent to recklessness. *Farmer v. Brennan*, 511 U.S. 825, 835–36 (1994).

To be deliberately indifferent, the official must "know[] of and disregard[] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. The Third Circuit has found deliberate indifference in a variety of contexts, including "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment.'" *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).

To survive summary judgment, a plaintiff "must point to some evidence beyond [his] raw claim that [the defendant was] deliberately indifferent." *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003) (quoting *Singletary v. Pa. Dep't of Corr.*, 266 F.3d 186, 192 n.2 (3d Cir. 2001)). For example, the court in *Burgos v. City of Philadelphia* denied the defendant's summary judgment motion because a genuine issue of material fact remained concerning whether prison officials had acted with deliberate indifference. 439 F. Supp. 3d 470, 489 (E.D. Pa. 2020). There, the court considered the plaintiff's claims for denial of medical care where he had suffered from scabies while incarcerated. *Id.* The plaintiff submitted the Center for Disease Control's recommendation that scabies be treated through both medication and decontamination of bedding and clothing. *Id.* The defendant conceded that it did not have a scabies policy and did not decontaminate the plaintiff's bedding and clothing. *Id.* The court found that a "reasonable jury could conclude from the evidence that [the defendant] knew about [the plaintiff's scabies infection] but was unprepared to take the steps necessary to address those issues," and thus a genuine issue of material fact remained as to whether this rose to a level of deliberate indifference. *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juv. Det. Ctr.*, 372 F.3d 572, 584–85 (3d Cir. 2004)); *see also*

*Natale*, 318 F.3d at 582–83 (reversing summary judgement where defendants, prison healthcare providers, were aware plaintiff was insulin-dependent, defendants failed to ask how often he needed insulin and did not administer insulin until twenty-one hours after plaintiff was admitted, and plaintiff suffered a stroke attributable to failure to administer insulin). In contrast, the Third Circuit in *Glazewski v. Corzine* affirmed summary judgment in favor of the defendants where the plaintiff, who suffered from leukemia, failed to demonstrate that the prison officials acted with a "sufficiently culpable state of mind." 385 F. App'x 83, 87 (3d Cir. 2010) (quoting *Farmer*, 511 U.S. at 834). There, while the plaintiff disagreed with his course of treatment, the record showed he received medical care for his leukemia, and nothing indicated that the defendants knew of any mistreatment toward him. *Id.*

The Third Circuit has explained that the deliberate indifference prong varies between two types of claims a plaintiff may bring in this context: (i) delay or denial of medical treatment, or (ii) inadequate medical treatment. *Pearson v. Prison Health Serv.*, 850 F.3d 526, 535 (3d Cir. 2017). When proceeding with the former claim—delay or denial of medical treatment—the deliberate indifference prong involves only the requisite state of mind. *Id.* at 537. This can be shown through "surrounding circumstances . . . sufficient to permit a reasonable jury to find that the delay or denial was motivated by non-medical factors." *Id.* When proceeding with the latter claim—inadequate medical treatment—the analysis involves an *additional* element regarding the propriety of treatment. *Id.* at 535. Specifically, the court presumes that treatment is proper "absent evidence that it violates professional standards of care." *Id.* Yet, even if treatment falls below professional standards, "the mere receipt of inadequate care does not itself amount to deliberate indifference— the defendant must also act with the requisite state of mind when providing that inadequate care." *Id.* That requisite state of mind may be shown through circumstantial evidence regarding the

defendant's course of conduct. *Id.* at 535–36 (citing *In re Kauffman*, 675 F.2d 127, 128 (7th Cir. 1981)).  Therefore, a plaintiff may proceed to trial on an inadequate medical treatment claim only "when there is a genuine issue of fact regarding *both* the adequacy of care and the defendant's intent." *Id.* at 537 (emphasis added).

As a threshold matter, it is unclear whether Plaintiff brings a claim for inadequate medical treatment or for delay or denial of treatment.  Plaintiff appears to use the terms interchangeably. (*See* SAC at 3 ("Count One: Failure to Administer Adequate Medical Remedy/Denial of Medical Care"); *compare* Opp. at 7 ("Point II: The Delay and Denial of Proper Medical Care Constitute[s] a Viable Claim for Cruel and Unusual Punishment"); *with id.* at 10 ("The facts here also meet the requirements of . . . inadequate medical treatment.").  However, regardless of which claim Plaintiff proceeds with, he does not point to any evidence in the record, circumstantial or otherwise, from which a jury could infer that Defendants disregarded a known medical need.  As such, Plaintiff has not made a sufficient showing that Defendants acted with the requisite state of mind, an essential element for either type of claim.

It is undisputed that Defendants actually provided treatment to Plaintiff for his Bell's Palsy on multiple occasions—including prescribing him Prednisone, artificial tears, and an eye patch— and thus his claim appears to amount to one for inadequate medical treatment.  (*See* Def. SUMF ¶¶ 6, 15 & 21; Pl. SUMF ¶¶ 6, 15 & 21).  Construing Plaintiff's claim as such, Plaintiff does not cite any evidence in the record to show that Defendants' state of mind rose to the level of "disregard" for an "excessive risk," *see Farmer*, 511 U.S. at 837, or refusal to provide "needed or recommended medical treatment," *see Rouse*, 182 F.3d at 197.  Rather, Plaintiff's claim sounds in mere disagreement with his medical treatment, which does not establish a constitutional violation. *See, e.g.*, *Spruill*, 372 F.3d at 235.  Thus, Plaintiff fails to make a showing sufficient to establish

11

the existence of an element essential to a claim for inadequate medical treatment, namely, deliberate indifference.[3]

Construing Plaintiff's claim as one for delay or denial of medical treatment fares no better. First, with respect to Plaintiff's argument that Defendants initially denied his request for Acyclovir (Opp. at 10 (citing Dorsainvil Dep. at 31:7–23 & 33:2–7)), the record contains insufficient evidence from which a reasonable jury could find that Defendants delayed or denied providing him the drug. Plaintiff's own testimony belies his claim.[4] Plaintiff testified that Gallagher ordered Acyclovir upon his request, which he received the following month. (Dorsainvil Dep. at 31:1–33:12). Further, nothing in the record indicates that Defendants delayed Plaintiff's treatment with

---

[3] Moreover, Plaintiff does not establish the second element of an inadequate medical treatment claim—that Defendants violated the professional standard of care. Plaintiff only attaches a 2007 article from a medical journal that appears to suggest that health care providers should treat Bell's Palsy patients with a combination of Acyclovir and Prednisone. (*See* D.E. No. 114-2, Ex. B to Hudson Cert. at 998, 1000–01). Plaintiff does not provide an analysis as to how Defendants violated the professional standard of care, nor any argument as to how the article creates a genuine issue of fact regarding whether Defendants violated the professional standard of care. Even if Plaintiff had made such a showing, as discussed above, his claim would still fail for lack of any evidence to suggest that Defendants acted with the requisite state of mind, without which he cannot proceed to trial on an inadequate medical treatment claim. *See Pearson*, 850 F.3d at 537.

[4] Specifically, Plaintiff testified that Gallagher ordered Acyclovir upon his request in February 2013:

> A. . . . I was demanding to get the Acyclovir. . . .
> Q. Were you provided that medication when you requested it?
> A. Yes, she ordered it for me, yes.
> Q. After she ordered it, you received it?
> A. Yes, I received it on [sic] a month later.
> Q. When you say "ordered it," do you know if they didn't have it on hand in the prison and [it] needed to be ordered to be provided to you?
> A. That could possibly be true. I can't say.
> Q. And when you received it approximately one month later, you took that medication?
> A. Yes.
>        . . . .
> Q. When you saw Nurse Gallagher . . . with regards to requesting that specific medication, was there any other discussion had or any other treatment provided at that visit?
> A. No. Just a general follow[-]up with regards to my condition and [she] asked why I needed this, and I explained why I needed it.

(Dorsainvil Dep. 33:2–33:22 & 34:6–14).

Acyclovir, let alone for non-medical reasons. *See Rouse*, 182 F.3d at 197. Second, as to Plaintiff's claim that Defendants denied him physical therapy (Opp. at 10), Plaintiff points to no evidence in the record from which a reasonable jury could find that Defendants knew of a need for physical therapy or otherwise knew of a substantial risk of harm from the failure to provide such therapy. *See Lanzaro*, 834 F.2d at 347. Rather, Defendants assert that they did not refer Plaintiff to physical therapy because it is an "'unproven therapy' that is not indicated for Bell's Palsy," which Plaintiff does not dispute. (Def. SUMF ¶ 24; Pl. SUMF ¶ 24). Moreover, Plaintiff testified that he was never refused medical treatment or denied the opportunity to meet with health care providers while he was in the state prison system. (Dorsainvil Dep. at 20:9–20). Thus, any claim for delay or denial of treatment also fails for the same reason: Plaintiff fails to make a showing sufficient to establish deliberate indifference.

Accordingly, no dispute of material fact can exist because Plaintiff has not established the requisite element of deliberate indifference, *see Celotex*, 477 U.S. at 322–23, and Defendants are entitled to summary judgement on Plaintiff's Eighth Amendment claim under Count One.

### B.    Negligence (Count Two)

Upon dismissal of a plaintiff's federal claims, a district court may decline to exercise supplemental jurisdiction over any remaining state law claims. 28 U.S.C. § 1367(c)(3); *see also Kramer v. Kubicka*, 222 F. App'x 184, 186 (3d Cir. 2007). Because the Court dismisses Plaintiff's federal claims against Defendants under Count One, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining claims against Defendants for negligence pursuant to state law under Count Two.[5]

---

[5] Defendants additionally argue that the applicable statutes of limitations bar Plaintiff's federal and state law claims against Defendant Gallagher. (Mov. Br. at 4). Because the Court finds that Plaintiff fails to establish a requisite

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' motion for summary judgment. An appropriate Order accompanies this Opinion.

Dated: Dec. 23, 2022　　　　　　　　　　　　　　　　*/s/ Esther Salas*
　　　　　　　　　　　　　　　　　　　　　　　　　　**Esther Salas, U.S.D.J.**

---

element of his federal claim and declines to exercise supplemental jurisdiction over his state law claim, the Court does not reach this argument.